UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

**Case No.  2:18-cv-14459-KAM**

TANYA MCDANIEL, *on behalf of*
*Herself and all others similarly situated,*

        Plaintiffs,

v.

ACTION COLLECTION AGENCIES, INC.
A Massachusetts incorporated company d/b/a
ACTION COLLECTION AGENCY
OF BOSTON,

        Defendant.

_____/

**JOINT MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

      COME NOW, Plaintiff, TANYA MCDANIEL, and Defendant, ACTION COLLECTION

AGENCIES, INC., A Massachusetts incorporated company d/b/a ACTION COLLECTION

AGENCY OF BOSTON, by and through, their respective undersigned counsel, and files this Joint

Motion for Preliminary Approval of Class Action Settlement Agreement, and in support thereof,

states as follows:

<u>**Introduction**</u>

      Plaintiff filed a Class Action Complaint alleging that Defendant failed to comply with

certain provisions of the Fair Debt Collection Practices Act ("FDCPA") when sending debt

collection letters to her and other Florida consumers. Specifically, Tanya McDaniel ("Plaintiff")

alleged that Defendant's debt collection letters did not comply with the federal Fair Debt

1

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Defendant denies any liability or that its practices violated the FDCPA and raised certain defenses against such allegations.

Over the course of the litigation, the parties discussed possible resolution to the allegations and have negotiated in good faith to reach an agreement to resolve this case. The Settlement Agreement attached hereto provides for specific relief to both the Plaintiff and to Florida based class which shall include monetary compensation to the Plaintiff as class representative as well as the statutory maximum per statute as a Class Settlement Fund which equals 1% of Defendant's net worth. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting statutory damages in a class action to the lesser of $500,000 of 1% of the net worth of the debt collector).

Defendant will separately pay the costs of class settlement administration, and an individual damages award for Plaintiff. Defendant also will pay—separate from the above amounts—Plaintiff's counsel's reasonable attorneys' fees and expenses as awarded by the Court. Finally, Defendant had already corrected the Massachusetts disclosure issue prior to this litigation but has agreed to correct its form debt collection letter to address the allegations made in this lawsuit.

In order to facilitate the terms and conditions of this Settlement Agreement, the Parties seek certification of the settlement class and preliminary approval of the settlement. The Parties and their counsel strongly believe that the settlement terms and conditions are fair, reasonable, and adequate, and in the best interests of class members. As more fully set forth below, the Parties respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement.

## <u>Summary of the Settlement</u>

I.     **The settlement provides monetary compensation for participating class members; in addition, Defendant has ceased using the form of debt collection letter at issue.**

The Settlement Agreement[1] defines a settlement class (the "Class") under Rule 23(b)(3) comprised of:

> All natural persons with addresses in the State of Florida who were mailed letters containing the Massachusetts disclosure as stated in Paragraph 20 of the Complaint from November 9, 2017 until the date of filing of this Complaint (November 8, 2018).

Defendant has identified 4,069 members of the Class, including Plaintiff. Class members who submit a timely claim form will receive a pro-rata share of the settlement fund up to a maximum individual recovery of $1,000.00. Thus, if all of the Class members submit a claim form for themselves, each Class member will receive approximately $2.05. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, such funds will be redistributed to the Florida Rural Legal Services, Inc.—the *cy pres* recipient selected by the parties.

In addition, Defendant has agreed to cease using the form debt collection letter at issue. Importantly, Plaintiff might not have obtained this relief had this case gone to trial. *See Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").[2]

Finally, in addition to the foregoing, and separate and apart from the settlement fund, Defendant will pay $1,000 to the named plaintiff as additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), plus a Service Award to be determined by the Court, but not to exceed $1,376.00 as well as the costs of notice and administration, and an award of reasonable attorneys' fees and expenses to counsel for Plaintiff, subject to the Court's approval.

## II.      The Settlement Agreement provides for direct mail notice to all class members.

---

[1]      A true and correct copy of the Settlement Agreement is attached as Exhibit A.
[2]      Unless otherwise indicated, all internal citations and quotations are omitted and all emphasis is added.

The Settlement Agreement requires an ample notice program consisting of direct mail notice to each member of the Class. Defendant has in its possession the names and recent addresses of each member of the Class. The settlement administrator will take all reasonable steps necessary to ensure that each member of the Class receives direct mail notice.  To that end, the parties have selected First Class, Inc. to act as the settlement administrator. First Class, Inc. is an experienced settlement administrator that has previously been approved to administer similar class action settlements. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship,* No. 8:16-cv-00803-JSM-TGW, 2019 WL 311335, at * 2 (M.D. Fla. Jan. 24, 2019); Veness *v. Heywood, Cari & Anderson, S.C.*, No. 17-cv-338-bbc, 2017 WL 6759382, at *5 (W.D. Wisc. Dec. 29, 2017); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–cv–00142–SJD, 2014 WL 4816698, at *2 (W.D. Ohio Sept. 18, 2014).

Class members wishing to receive a settlement check will need to take affirmative action by filing a Claim Form and return the form to the Class Administrator within the deadline.

**III.    This Court Should Preliminarily Certify the Settlement Class**

**A.    The FDCPA is well-suited for class action treatment.**

In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  15 U.S.C. § 1692(b).

Class treatment of claims under the FDCPA is essential to its statutory structure. "Representative actions . . . appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal*

*Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). As the Fourth Circuit Court of Appeals recognized, "[w]ithout a real sting, the defendants would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 141 (4th Cir. 1996). Congress, in fact, designated special remedies to unnamed members of a class action filed under the FDCPA. *See* 15 U.S.C. §§ 1692k(a), (b).

Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Hepson v. J.C. Christensen & Assocs., Inc.*, No. 8:07-cv-1935, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) ("the FDCPA must be liberally construed to support its remedial nature"). To that end, the Eleventh Circuit uses the "least-sophisticated consumer" standard to evaluate whether a debt collector's communications violate the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) ("we believe that the FDCPA's purpose of protecting consumers is best served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls.").

### B.    Plaintiff satisfies the requirements of Rule 23(a).

To attain certification of the proposed class, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  Because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (Dimitrouleas, J.) (certifying FDCPA class).

Here, because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

1.   **The class is so numerous that joinder of all members is impracticable.**

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). While parties seeking class certification do not need to know the "precise number of class members," they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Defendant mailed 4069 letters to persons in Florida between November 9, 2017 and the filing of the instant Complaint on November 8, 2018, each of which contains materially similar language as that which Plaintiff contends violates the FDCPA. Because the class has so many members, it is sufficiently numerous that joinder is impracticable. *See Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (King, J.) (numerosity satisfied with estimated class size of at least 50 persons). Moreover, there is no difficulty identifying the members of the Class, as Defendant has the names and recent addresses of each member.

2.      **Plaintiff's claims present questions of law and fact common to the proposed class.**

Rule 23(a) also requires that there be at least one issue common to all members of the Class.  *Drossin*, 225 F.R.D. at 615. However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996) (Moreno, J.). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004) (Moreno, J.).

The questions of law and fact at issue here are entirely common. The claims asserted by Plaintiff and the Class originate from the same conduct, practice, and procedure on the part of Defendant, namely the issuance of a standardized initial debt collection letter. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. *See, e.g.*, *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 659 (M.D. Fla. 2015) ("…Bush Ross issued standardized initial debt collection letters, charged and sought to collect fees incident to the collection of a debt, and included untimely debt collection disclosures in its foreclosure filings. The question of whether each of these actions by Bush Ross violates the FDCPA is a legal question common to all members of the putative class and requires proof of the same material facts."). For these reasons, claims brought as a result of a form debt collection letter are routinely certified as class actions. *See, e.g.*, *Dickensv. GC Servs. Ltd. P'ship*, No. 8:16-CV-803-T-30TGW, 2018 WL 4732478, 1380-81 (M.D. Fla. Oct. 2, 2018); *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664 (S.D. Fla. 2014) (Cohn, J.); *Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013); *Lewis v. ARS Nat'l Servs., Inc.*, No. 2:09-cv-1041, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt.*

*Servs. Corp.*, No. 8:08-cv-493, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) (Dimitrouleas, J.); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999).

The Class here, whose members share common claims based on a form debt collection letter, should be certified for the same reasons.

> **3.    Plaintiff's claims are typical of the claims of the class she seeks to represent.**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

"The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations."). To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy." *In re Terazosin Hydrochloride*, 220 F.R.D. at 686.

Here, Plaintiff and the members of the Class allegedly suffered by way of a common letter sent by Defendant in that they each received the same standardized debt collection letter. Thus, Plaintiff possesses the same interests and has claimed to have suffered the same injuries as each

member of the Class and asserts identical claims and seeks identical relief on behalf of the unnamed members of the Class. To be sure, there is no doubt that Plaintiff is a member of the Class and that her claims are typical of those of the other members of the Class. *See* Dkt. No. 1-1 (demonstrating that Ms. McDaniel is a member of the Class in that she was sent the violative letter at issue during the class period). As a result, Plaintiff's claims are typical of those of the Class she seeks to represent. *See Agan*, 222 F.R.D. at 698 ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter."); *Swanson*, 186 F.R.D. at 668 ("Because Plaintiff alleges that the notice itself was contradictory and misleading to the least sophisticated consumer and Plaintiff as well as the putative class received the notice, the Court finds that typicality has been shown.").

### 4. Plaintiff, and her counsel, will fairly and adequately protect the interests of Class members.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that she can act in a fiduciary role representing the interests of the class and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Solutions Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (certifying class action).

Plaintiff's claims are aligned with the claims of members of the Class. She has been previously testified in her deposition that she committed to pursue the members' claims with their best interests in mind, and those efforts resulted in the excellent settlement at bar. Plaintiff has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.  Moreover, Plaintiff has retained the services of counsel, Leo Desmond, Esquire, who is experienced in complex class action litigation, will vigorously prosecute this action, and will protect all absent Class members. As a result, Plaintiff satisfies Fed. R. Civ. P. 23(a)(4).

**5.      Plaintiff's counsel should be appointed Class Counsel.**

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class." Proposed Class Counsel will continue to prosecute this action, as they have done to date. In addition to satisfying the adequacy prong of Rule 23(a)(4), Plaintiff's counsel also satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel.

**IV.      Plaintiff satisfies the requirements of Rule 23(b)(3).**

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Pertinent here, Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

**A.      Common questions of law and fact predominate over any individualized inquiries.**

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class

predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4.

Here, common issues necessarily predominate because Plaintiff's claim is based on standardized conduct by Defendant through its use of form initial debt collection letters. For this reason, courts routinely find that claims based on form debt collection letters and standardized conduct satisfy the predominance requirement of Rule 23(b)(3). *See, e.g.*, *Sharf*, 295 F.R.D. at 671 ("Because the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA and FCCPA, common issues predominate."); *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) (Scola, J.) ("As to the FDCPA class, the Court finds that common issues predominate."); *Klewinowski*, 2013 WL 5177865, at *4 ("Furthermore, the common question to be decided is whether the "YOUR CREDITORS" letter violates the FDCPA. This common issue predominates over any other issue presented in this matter, and thus, the requirement of predominance has been satisfied."); *Agan*, 222 F.R.D. at 701 ("The Court finds that Plaintiffs have satisfied Rule 23(b)(3) and that monetary damages are appropriate in this class action. The common issues presented by sending allegedly illegal form letters and claims of lien predominate over any individual issues presented, and the class action is the superior method for resolving this dispute because it would be uneconomical to litigate these issues individually.").

As the Northern District of Alabama explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud.  Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived

> or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5.

For these same reasons, Rule 23(b)(3) predominance is satisfied here.

**B.     A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's claims, and the claims of class members.**

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). As the Eleventh Circuit recently explained, "[m]any courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017). This is in part because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016). Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l., Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015). And finally, most class members would be unaware

of their rights in the first place, and as a result, unlikely to pursue claims. *See, e.g.*, *Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006) ("Not only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually.").

Because the claims in this case all arise from form debt collection letters, a class action is the superior vehicle for determining the rights of absent class members. Indeed, no one member of the Class has an interest in controlling the prosecution of the action because the claims of all members of the Class are identical as the allegations involve standardized conduct, and each class member is likely to have suffered relatively small statutory damages.  In certifying FDCPA claims, Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA [].

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013); *see also Roundtree*, 304 F.R.D at 662 ("Here, given the large number of claims, the relatively small amount of damages available, the desirability of consistently adjudicating the claims, the high probability that individual members of the proposed classes would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually, a class action is the superior method by which Roundtree and the class members' claims under the FDCPA should be adjudicated.").

For these reasons, a class action is the superior method to adjudicate this matter. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at \*5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Agan*, 222 F.R.D. at 701 (finding a class action superior because, in part, "Debtors who seek to change the unfair debt collection practices may lack the incentive to bring action under the FDCPA [] because successful plaintiffs are only awarded a maximum of \$1,000.").

### C.  This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).

Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and notice has been issued, the Court then holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether

the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

A full fairness determination is not necessary at this early juncture; nevertheless, the Eleventh Circuit has identified six factors for analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1326 (11th Cir. 2013). Rule 23(e) itself also requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, the Parties are confident that each relevant factor supports the conclusion that the parties' settlement is fundamentally fair, adequate, and reasonable, and should be approved. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DN, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006); ("'Public policy strongly favors the pretrial settlement of class action lawsuits.' Settlement 'has special importance in class actions with their notable uncertainty,

15

difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice.'"); NEWBERG, § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

### D. There was no fraud or collusion behind the parties' settlement.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Here, though the parties began engaging in settlement discussions soon after Defendant was served with the Complaint, those negotiations continued for several months before the parties reached an agreement.

And that agreement was reached only after numerous discussions between counsel, and after Defendant provided Plaintiff with information concerning the size of the Class and Defendant's net worth. The settlement thus is not a product of collusion and was the result of arm's-length settlement negotiations when each party had a view as to the strengths and weaknesses of its position.

### E. The expense, and duration of the litigation favors preliminary approval.

Turning to the second factor, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (Gold, J.). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *see also*

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

This case was no different. The Class Action Settlement Agreement was able to be concluded following the completion of a review of the financial net worth calculation and an agreement to increase the class size from the Southern District of Florida to the entire State of Florida to bring full resolution of this issue. Further, the case was delayed in the interim as the Plaintiff sought protection under the Bankruptcy Court to which this Class Settlement shall also require Court approval. If the litigation had moved forward, Plaintiff would have had to obtain class certification, and prevail at summary judgment, or trial, and on an appeal, to obtain any benefits for members of the Class. *See, e.g.*, *Bennett v. Behring Corp.,* 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.)*, aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"). Moreover, because damages under the FDCPA are not mandatory, there is no guarantee that Plaintiff would have recovered any money for the Class. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

Given these considerations, preliminary approval of the settlement is appropriate, in part, to avoid the uncertainties of trial. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297,

319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

> **F.     The parties have sufficiently developed the factual record through discovery to enable Plaintiff and her counsel to make a reasoned judgment concerning settlement.**

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (King, J.). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties had extensive discussions about the merits of the claims. In addition, Defendant provided Plaintiff with information concerning the size of the Class and Defendant's net worth—the sole determinant of the Class's total potential statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B). Moreover, both Counsel for the Parties are well-versed in FDCPA litigation, having litigated numerous FDCPA class actions nationwide. *See* Ex. 1, at ¶ 8. The settlement was therefore consummated when the parties had a good view towards the strengths and weaknesses of their respective positions, and an understanding of the maximum potential recovery for the Class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### G.    The probability of Plaintiff's success on the merits coupled with the range of possible recovery favor preliminary approval.

Next, this Court also must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at \*10 (M.D. Fla. Nov. 23, 2009), *aff'd sub nom*. *Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843 (11th Cir. 2011), and *aff'd sub nom. Canupp v. Liberty Behavioral Healthcare Corp.*, 447 F. App'x 976 (11th Cir. 2011) ("Courts judge the fairness of a proposed compromise by weighing the plaintiffs' likelihood of success on the merits against the amount and form of the relief achieved in the settlement."). In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350.

As an initial matter, class statutory damages here were capped at $8,351.42—1% of Defendant's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). Also noteworthy, there is no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards up to certain amounts after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, even had Plaintiff prevailed at trial, the jury may have awarded little in the way of statutory damages, or even potentially none at all. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at \*11 (N.D. Ohio 2011) (analyzing the

factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages' to members of the class).

Given the foregoing, the immediate relief provided by the settlement is the maximum statutory award under the FDCPA. The Parties have agreed to a "claims made" process which will increase the amount of the pro rata share of each claimant rather than distribute a nominal amount to each class member. This "claims made" process represents an excellent result for the participating class and by eliminating undue waste and costs on class administration. Indeed, the settlement here also compares favorably to other similar FDCPA class settlements approved throughout the country. *See, e.g.*, *Dickens*, 2019 WL 311335, at *4 (preliminary approval of FDCPA settlement that provides for $10 per class member); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

What's more, the Parties have resolved the underlying issue by eliminating the use of the debt collection disclosure—a benefit that was not necessarily available at trial. *See, e.g.*, *Midland Funding LLC*, 644 F. Supp. 2d at 977. In sum, considering the benefits obtained here, in

comparison to those likely at trial and those obtained in other similar actions, plus the risks in moving forward, this factor supports preliminary approval of the settlement.

### H.     The opinions of Plaintiff and her counsel strongly favor preliminary approval.

Both Parties and their counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. A strong initial presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Here, both counsel are extremely experienced in class action litigation, particularly cases under the FDCPA. Correspondingly, Plaintiff's and her counsel's strong support for this settlement strongly supports this Court's approval of the same.

### I.     The settlement treats class members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class

21

members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim resulting from receipt of the same form of debt collection letter from Defendant. And as a result, the settlement provides that each participating class member will receive an equal portion of the settlement fund. As such, this factor supports preliminary approval. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at \*5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### J.    This Court should approve the proposed notice to class members.

Under Rule 23(e), this Court must also "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. "[N]otice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts…." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069 SBA, 2008 WL 1990806, at \*2 (N.D. Cal. May 5, 2008).

Here, the parties have agreed to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the class. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the

settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for statutory damages and reimbursement of her attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, this notice plan ensures that class members' due process rights are amply protected, and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable— was the best practicable notice.").

### K. This Court should schedule a final fairness hearing.

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at this hearing as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

The Parties respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 90 to 120 days after the Court's preliminary approval of the settlement.

**Conclusion**

The Parties jointly and respectfully requests that this Court enter the accompanying order granting preliminary approval to the parties' class action settlement.

**<u>SIGNATURE PAGE</u>**

Dated: **10-16-19**

By: */s/ Leo W. Desmond*
Leo W. Desmond, Esquire
Desmond Law Firm. P.C.
5070 Highway A1A, Suite D
Vero Beach, Florida 32963
Florida Bar No.
*Counsel for Plaintiff Tanya McDaniel and the Settlement Class*

ACTION COLLECTION AGENCIES, INC., A Massachusetts incorporated company d/b/a ACTION COLLECTION AGENCY OF BOSTON,

Dated: **10-16-19**

By: */s/ Ernest H. Kohlmyer, III, Esq., LL.M.*
Ernest H. Kohlmyer, III, Esquire
Florida Bar No.: 0110108
skohlmyer@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Telephone (407) 622-1772
Facsimile (407) 622-1884
*Counsel for Defendant, Action Collection Agencies, Inc., A Massachusetts incorporated company d/b/a Action Collection Agency of Boston*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on **October 16, 2019**, via the Clerk of Court's CM/ECF system which will provide electronic notice to the following attorney of record:  Leo W. Desmond, Esquire at *lwd@desmondawfirm.com* and Sovathary Jacobson, Esquire at *jacobson@desmondlawfirm.com* of Desmond Law Firm, P.C. (*Attorneys for Plaintiff*).

> */s/ Ernest H. Kohlmyer, III*
> Ernest H. Kohlmyer, III, Esquire
> Florida Bar No.: 110108
> skohlmyer@shepardfirm.com
> Mary Grace Dyleski
> Florida Bar No. 0143383
> Mdyleski@shepardfirm.com
> Shepard, Smith, Kohlmyer & Hand, P.A.
> 2300 Maitland Center Parkway, Suite 100
> Maitland, Florida 32751
> Telephone (407) 622-1772
> *Attorneys for Defendant*